Nathan Dooley (SBN 224331)
COZEN O'CONNOR
601 S. Figueroa Street
Suite 3700
Los Angeles, CA 90017
Tel.: 213.892.7933; Fax: 213.892.7999

Elliott R. Feldman (*pro hac vice to be filed*)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071; Fax: 215.701.2282

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY; STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY; MILBANK INSURANCE COMPANY; AMERICAN FAMILY INSURANCE COMPANY; AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.; AMERICAN STANDARD INSURANCE COMPANY OF OHIO; AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN; MAIN STREET AMERICA PROTECTION INSURANCE COMPANY; NGM INSURANCE COMPANY; OLD DOMINION INSURANCE COMPANY; PERMANENT GENERAL ASSURANCE CORPORATION; THE GENERAL AUTOMOBILE INSURANCE COMPANY, INC.; CHURCH MUTUAL INSURANCE COMPANY, S.I.; ERIE INSURANCE COMPANY; ERIE INSURANCE EXCHANGE ; ERIE INSURANCE COMPANY OF NEW YORK; ERIE INSURANCE PROPERTY & CASUALTY CO.; FLAGSHIP CITY INSURANCE COMPANY; AMERICAN STATES INSURANCE COMPANY; AMERICA FIRST INSURANCE COMPANY; AMERICAN ECONOMY INSURANCE COMPANY; AMERICAN

Case No.: _8:23-cv-00443_____

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

DEMAND FOR JURY TRIAL

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

STATES PREFERRED INSURANCE
COMPANY; CONSOLIDATED
INSURANCE COMPANY;
EMPLOYERS INSURANCE
COMPANY OF WAUSAU; FIRST
NATIONAL INSURANCE COMPANY
OF AMERICA; GENERAL
INSURANCE COMPANY OF
AMERICA; LIBERTY COUNTY
MUTUAL INSURANCE COMPANY;
LIBERTY INSURANCE
CORPORATION; LIBERTY MUTUAL
FIRE INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE
COMPANY; LIBERTY MUTUAL MID-
ATLANTIC INSURANCE COMPANY;
LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY; LIBERTY
PERSONAL INSURANCE COMPANY;
LM GENERAL INSURANCE
COMPANY; LM INSURANCE
CORPORATION; MONTGOMERY
MUTUAL INSURANCE COMPANY;
PEERLESS INDEMNITY INSURANCE
COMPANY; SAFECO INSURANCE
COMPANY OF AMERICA; SAFECO
INSURANCE COMPANY OF
ILLINOIS; SAFECO INSURANCE
COMPANY OF INDIANA; SAFECO
INSURANCE COMPANY OF
OREGON; SAFECO NATIONAL
INSURANCE COMPANY; THE FIRST
LIBERTY INSURANCE
CORPORATION; THE NETHERLANDS
INSURANCE COMPANY; WAUSAU
UNDERWRITERS INSURANCE
COMPANY; ALLIED PROPERTY &
CASUALTY INSURANCE COMPANY;
AMCO INSURANCE COMPANY;
COLONIAL COUNTY MUTUAL
INSURANCE CO.; DEPOSITORS
INSURANCE COMPANY;
HARLEYSVILLE INSURANCE
COMPANY; HARLEYSVILLE
INSURANCE COMPANY OF NEW
JERSEY; HARLEYSVILLE
INSURANCE COMPANY OF NEW
YORK; NATIONWIDE AFFINITY
INSURANCE COMPANY OF
AMERICA; NATIONWIDE
AGRIBUSINESS INSURANCE
COMPANY; NATIONWIDE GENERAL
INSURANCE COMPANY;
NATIONWIDE INSURANCE
COMPANY OF AMERICA;

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

2

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY;
NATIONWIDE MUTUAL INSURANCE
COMPANY; NATIONWIDE
PROPERTY & CASUALTY
INSURANCE COMPANY; TITAN
INSURANCE COMPANY; VICTORIA
FIRE & CASUALTY COMPANY;
VICTORIA SELECT INSURANCE
COMPANY; NEW JERSEY
INDEMNITY INSURANCE
COMPANY; NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY; GENERAL CASUALTY
COMPANY OF WISCONSIN;
GENERAL CASUALTY INSURANCE
COMPANY; SOUTHERN PILOT
INSURANCE COMPANY; and
UNIGARD INSURANCE COMPANY

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

       Plaintiffs,

       v.

HYUNDAI MOTOR AMERICA,
HYUNDAI MOTOR COMPANY, KIA
AMERICA, INC., KIA CORPORATION

)
)
)
)
)
)
)
)
)
)

       Defendants.

## **COMPLAINT**

Plaintiffs, State Automobile Mutual Insurance Company; State Auto Property & Casualty Insurance Company; Milbank Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Ohio; American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; NGM Insurance Company; Old Dominion Insurance Company; Permanent General Assurance Corporation; The General Automobile Insurance Company, Inc.; Church Mutual Insurance Company, S.I.; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Company of New York; Erie Insurance Property & Casualty Co.; Flagship City Insurance Company; American States Insurance Company; America First Insurance Company; American Economy Insurance Company; American

States Preferred Insurance Company; Consolidated Insurance Company; Employers Insurance Company of Wausau; First National Insurance Company of America; General Insurance Company of America; Liberty County Mutual Insurance Company; Liberty Insurance Corporation; Liberty Mutual Fire Insurance Company; Liberty Mutual Insurance Company; Liberty Mutual Mid-Atlantic Insurance Company; Liberty Mutual Personal Insurance Company; Liberty Personal Insurance Company; LM General Insurance Company; LM Insurance Corporation; Montgomery Mutual Insurance Company; Peerless Indemnity Insurance Company; Safeco Insurance Company of America; Safeco Insurance Company of Illinois; Safeco Insurance Company of Indiana; Safeco Insurance Company of Oregon; Safeco National Insurance Company; The First Liberty Insurance Corporation; The Netherlands Insurance Company; Wausau Underwriters Insurance Company; Allied Property & Casualty Insurance Company; Amco Insurance Company; Colonial County Mutual Insurance Co.; Depositors Insurance Company; Harleysville Insurance Company; Harleysville Insurance Company of New Jersey; Harleysville Insurance Company of New York; Nationwide Affinity Insurance Company of America; Nationwide Agribusiness Insurance Company; Nationwide General Insurance Company; Nationwide Insurance Company of America; Nationwide Mutual Fire Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Titan Insurance Company; Victoria Fire & Casualty Company; Victoria Select Insurance Company; New Jersey Indemnity Insurance Company; New Jersey Manufacturers Insurance Company; General Casualty Company Of Wisconsin; General Casualty Insurance Company; Southern Pilot Insurance Company; and Unigard Insurance Company, individually and on behalf of all other similarly situated insurance companies that issue and underwrite property and automobile insurance coverage in the United States, bring this action against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation.

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

**THE PARTIES**

1.      Plaintiff, State Automobile Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

2.      Plaintiff, State Auto Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

3.      Plaintiff, Milbank Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

4.      Plaintiff, American Family Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873, which, at all times material hereto was engaged in the business of issuing policies of insurance.

5.      Plaintiff, American Family Mutual Insurance Company, S.I., is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

6.      Plaintiff, American Standard Insurance Company of Ohio, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

5

53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

7.    Plaintiff, American Standard Insurance Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

8.    Plaintiff, Main Street America Protection Insurance Company is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

9.    Plaintiff, NGM Insurance Company, is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

10.    Plaintiff, Old Dominion Insurance Company is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

11.    Plaintiff, The General Automobile Insurance Company, Inc. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

12.     Plaintiff, Permanent General Assurance Corporation is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

13.     Plaintiff, Church Mutual Insurance Company, S.I. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 3000 Schuster Lane, Merrill, Wisconsin 54452 which, at all times material hereto was engaged in the business of issuing policies of insurance.

14.     Plaintiff, Erie Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

15.     Plaintiff, Erie Insurance Exchange is an unincorporated reciprocal exchange with a principal place of business located at100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

16.     Plaintiff, Erie Insurance Company of New York is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

17.     Plaintiff, Erie Insurance Property & Casualty Co. is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

LEGAL\61588560\6

18.    Plaintiff, Flagship City Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

19.    Plaintiff, American States Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

20.    Plaintiff, America First Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

21.    Plaintiff, American Economy Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

22.    Plaintiff, American States Preferred Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

23.    Plaintiff, Consolidated Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

24.    Plaintiff, Employers Insurance Company of Wausau is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

which, at all times material hereto was engaged in the business of issuing policies of insurance.

25.     Plaintiff, First National Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

26.     Plaintiff, General Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

27.     Plaintiff, Liberty County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

28.     Plaintiff, Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

29.     Plaintiff, Liberty Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

30.     Plaintiff, Liberty Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of

LEGAL\61588560\6

business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

31.    Plaintiff, Liberty Mutual Mid-Atlantic Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

32.    Plaintiff, Liberty Mutual Personal Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

33.    Plaintiff, Liberty Personal Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

34.    Plaintiff, LM General Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

35.    Plaintiff, LM Insurance Corporation is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

36.    Plaintiff, Montgomery Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

which, at all times material hereto was engaged in the business of issuing policies of insurance.

37.    Plaintiff, Peerless Indemnity Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

38.    Plaintiff, Safeco Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

39.    Plaintiff, Safeco Insurance Company of Illinois is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

40.    Plaintiff, Safeco Insurance Company of Indiana is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

41.    Plaintiff, Safeco Insurance Company of Oregon is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

42.    Plaintiff, Safeco National Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

43.    Plaintiff, The First Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

44.    Plaintiff, The Netherlands Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

45.    Plaintiff, Wausau Underwriters Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

46.    Plaintiff, Allied Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

47.    Plaintiff, Amco Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

48.    Plaintiff, Colonial County Mutual Insurance Co. is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

LEGAL\61588560\6

49.     Plaintiff, Depositors Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

50.     Plaintiff, Harleysville Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

51.     Plaintiff, Harleysville Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

52.     Plaintiff, Harleysville Insurance Company of New York is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

53.     Plaintiff, Nationwide Affinity Insurance Company of America is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

54.     Plaintiff, Nationwide Agribusiness Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

LEGAL\61588560\6

55.     Plaintiff, Nationwide General Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

56.     Plaintiff, Nationwide Insurance Company of America is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

57.     Plaintiff, Nationwide Mutual Fire Insurance Company was a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance. Nationwide Mutual Fire Insurance Company merged into Plaintiff Nationwide Mutual Insurance Company as of January 1, 2023.

58.     Plaintiff, Nationwide Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

59.     Plaintiff, Nationwide Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

60.     Plaintiff, Titan Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business

COZEN O' CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

61.    Plaintiff, Victoria Fire & Casualty Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

62.    Plaintiff, Victoria Select Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

63.    Plaintiff, New Jersey Indemnity Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

64.    Plaintiff, New Jersey Manufacturers Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

65.    Plaintiff, General Casualty Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

66.    Plaintiff, General Casualty Insurance Company, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at

all times material hereto was engaged in the business of issuing policies of insurance.

67.    Plaintiff, Southern Pilot Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

68.    Plaintiff, Unigard Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

69.    Defendant Hyundai Motor America ("**HMA**") is a California corporation with its principal place of business at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA engages in substantial business throughout the United States, including in this judicial district.

70.    Defendant Hyundai Motor Company ("**HMC**") is a South Korean corporation. HMC is the parent corporation of HMA.

71.    Defendant HMC, through its various entities, designs, manufactures, markets, distributes, and sells Hyundai automobiles in this judicial district and multiple other locations in the United States.

72.    Defendant HMA is HMC's U.S. sales and marketing division, and it oversees sales and other operations across the United States. HMA distributes Hyundai vehicles and sells these vehicles through its network of dealerships. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to HMC and HMA.

73.    Upon information and belief, Defendant HMC communicates with Defendant HMA concerning virtually all aspects of the Hyundai products which HMC and HMA distribute within the United States.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

74.    Upon information and belief, the distribution, service, repair, installation, and other pertinent decisions regarding anti-theft protections (or lack thereof) in Hyundai vehicles, as they relate to the defect in the Hyundai vehicles addressed in this action, were all made and performed by Defendant HMA and HMC.

75.    Upon information and belief, Defendants HMA and HMC developed the relevant marketing materials regarding the differences between trim packages and warranty booklets for the Hyundai vehicles that are the subject of this action.

76.    Upon information and belief, the Hyundai dealers that sold Class Vehicles[1] to Plaintiffs' and the Class Members' insureds hold themselves out, with HMA and HMC's express and implied permission, as associated with HMA and HMC to sell HMA and HMC's vehicles on HMA and HMC's behalf.

77.    For instance, the Hyundai dealers that sold Class Vehicles to Plaintiffs' and the Class Members' insureds are expressly authorized by HMA and HMC to offer express warranties to purchasers of Hyundai vehicles, directly from HMA and HMC.

78.    The Hyundai dealers that sold Class Vehicles to Plaintiffs' and the Class Members' insureds were acting as HMA and HMC's agents with actual and apparent authority in selling the Class Vehicles to Plaintiffs' and the Class Members' insureds.

79.    Defendant Kia America, Inc. ("**KA**") (formerly Kia Motors America, Inc.) is a California corporation with its principal place of business at 111 Peter Canyon Rd., Irvine, CA 92606. KA engages in continuous and substantial business throughout the United States, including in this judicial district.

80.    Defendant Kia Corporation ("**KC**") is a South Korean corporation. KC is the parent corporation of KA.

---

[1] The "Class Vehicles" (or "**Vehicles**") are defined as "all 2011-2022 Kia vehicles or 2011-2022 Hyundai vehicles equipped with traditional 'insert-and-turn' steel key ignition systems."

LEGAL\61588560\6

81.     Defendant KA is an automobile design, manufacturing, distribution, and service corporation doing business within the United States. Furthermore, Defendant KA designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Kia vehicles that are the subject of this litigation.

82.     Defendant KA is the U.S. sales and marketing division of KC, which oversees sales and other operations across the United States. KA distributes Kia vehicles and sells these vehicles through its network of dealerships. Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to KC and KA.

83.     Upon information and belief, the distribution, service, repair, installation, and decisions regarding anti-theft protections in Kia vehicles (or lack thereof), as they relate to the defect in the Kia vehicles at issue in this action, were all made and performed by Defendants KA and KC.

84.     Upon information and belief, Defendants KA and KC developed the relevant marketing materials regarding the differences between trim packages and warranty booklets for the Kia vehicles that are the subject of this action.

85.     Upon information and belief, Defendant KC communicates with Defendant KA concerning virtually all aspects of the Kia products which KC and KA distribute within the United States.

86.     Upon information and belief, the Kia dealers that sold Class Vehicles to Plaintiffs' and the Class Members' insureds hold themselves out, with KA and KC's express and implied permission, as associated with KA and KC to sell KA and KC's vehicles on KA and KC's behalf.

87.     For instance, the Kia dealers that sold Class Vehicles to Plaintiffs' and the Class Members' insureds are expressly authorized by KA and KC to offer express warranties to purchasers of Kia vehicles, directly from KA and KC.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

88.     The Kia dealers that sold Class Vehicles to Plaintiffs' and the Class Members' insureds were acting as KA and KC's agents with actual and apparent authority in selling the Class Vehicles to Plaintiffs' and the Class Members' insureds.

89.     As of the end of 2021, KC's largest shareholder is HMC, which holds 33.88 percent of KC's stock.

90.     HMA and HMC are collectively referred to in this complaint as "**Hyundai**" unless identified separately.

91.     KA and KC are collectively referred to in this complaint as "**Kia**" unless identified separately.

92.     HMA, HMC, KA, and KC are collectively referred to in this complaint as "**Defendants**" unless identified separately.

## JURISDICTION AND VENUE

93.     The Court has general personal jurisdiction over Defendants because they conduct substantial business in California, and they intentionally and purposefully placed vehicles that are the subject of this action into the stream of commerce within California and elsewhere in the United States. Further, HMA and KA are headquartered in California.

94.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) as the amount in controversy exceeds $5 million, exclusive of interest and costs, at least one member of the class is a citizen of a state different from each of the named defendants, and the number of members of the proposed classes exceeds 100.

95.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the Plaintiffs and Class Members are domiciled in a different state than all Defendants and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

LEGAL\61588560\6

96.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as all defendants do substantial business in this judicial district, including the selling of the vehicles at issue.

## FACTUAL ALLEGATIONS

97.     Between 2011 and 2022, Kia and Hyundai sold vehicles equipped with traditional 'insert-and-turn' steel key ignition systems, and without immobilizers that, when properly designed and installed, have been proven to deter auto theft. Unlike most, if not all other vehicles, certain makes and models of the Defendants' vehicles are not equipped with an "immobilizer," or any other comparable anti-theft feature or design element that works to prevent the car from being started, driven forward and steered.  This security vulnerability makes the Defendants' vehicles dangerously easy to rapidly steal.

98.     Effective July 28, 2010, the U.S. Department of Transportation, National Highway Traffic Safety Administration, required manufacturers of vehicles sold in the United States to have anti-theft protection under the most recent amendment of Federal Motor Vehicle Safety Standard ("**FMVSS**") 114, which states: "The purpose of this standard is to decrease the likelihood that a vehicle is stolen … This standard applies to passenger cars …"  The standard provides that without a key, the vehicle must prevent "normal activation of the vehicle's engine or motor" and either "steering, or forward self-mobility."  In other words, a key is required in order to start the engine and drive the vehicle.

99.     In the U.S., and indeed, worldwide, electronic transmitters and receivers called "immobilizers" are utilized to comply with the United States' regulatory requirements to prevent the theft of vehicles.  Immobilizers, when properly designed and installed, have been proven to deter auto theft.  Indeed, a

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

2016 study reflects that the use of immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[2]

100.    Immobilizers are devices installed within vehicles that contain a receiver. Immobilizers prevent the vehicle's engine from activating and prevent the vehicle from achieving forward self-mobility if the receiver does not detect a corresponding, paired transponder, which is located in the vehicle's key. If the receiver within the immobilizer does not detect the transponder within the vehicle's key nearby, the engine will not start, and the vehicle will not achieve forward self-mobility, even if the ignition is turned.

101.    Recognizing the value of immobilizers as an anti-theft device, countries across the globe require immobilizers to be installed as standard equipment in new vehicles. For example, the European Union has required immobilizers as a standard feature for all new vehicles since 1998, Australia since 2001, and Canada since 2007.[3]

102.    The United States does not require the use of immobilizers outright. Instead, immobilizers are one method to meet the requirements of FMVSS 114. The National Highway Traffic Safety Administration (NHTSA) has issued an opinion letter confirming that vehicles with immobilizers satisfy FMVSS 114 because the immobilizer prevents the normal activation of the vehicle's engine and forward self-mobility of the vehicle when the vehicle's key is removed. U.S. Nat'l Highway Traffic Safety Admin., Opinion Letter (Sept. 24, 2004), https://www.nhtsa.gov/interpretations/gf005229-2.

103.    If a vehicle does not contain an immobilizer, it still must satisfy Federal Motor Vehicle Safety Standard 114 through one or more other features or design elements. In other words, a lack of an immobilizer alone does not violate FMVSS

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

---

[2] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter for Car Thieves*, 126 ECON. J. 1264, 1283 (2016).
[3] *Id.* at 1265.

114, but vehicles must have *some* anti-theft feature or design element that achieves the results required under FMVSS 114.

104.    In the United States, immobilizers have become an industry standard anti-theft protection device.  Indeed, Kia and Hyundai's major competitors include immobilizers as standard anti-theft technology in their vehicles, and thus comply with FMVSS 114.

105.    Kia and Hyundai, however, have refused to include immobilizers as standard anti-theft technology in all of their vehicles. Kia and Hyundai included immobilizers as anti-theft protection in certain of their vehicles; in other vehicles, however, including the vehicles at issue in this action, Kia and Hyundai did not provide purchasers of their automobiles with the anti-theft protection provided by immobilizers or other anti-theft features or design elements <u>unless</u> the consumers purchased expensive trim packages which included luxury features having nothing to do with vehicle safety requirements or, if anti-theft features or design elements were provided, they failed to fulfill the functions or achieve the results required by FMVSS 114.

106.    Further, Kia and Hyundai did not include any other features or design elements on the vehicles at issue in this action that would prevent those vehicles from being easily stolen or otherwise bring those vehicles into compliance with FMVSS 114.

107.    In short, Kia and Hyundai have been breaking federal law by continually selling certain of their cars without anti-theft protection sufficient to satisfy federal regulations intended to protect life and property. In order for consumers to obtain these protections in certain Kia and Hyundai vehicles, Kia and Hyundai force the consumer to pay thousands of dollars extra for trim packages which include anti-theft protection, but which also include unnecessary features having nothing to do with anti-theft protection.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

22

108.    Kia and Hyundai improperly made anti-theft protection in their vehicles dependent upon the purchaser's ability to pay for luxurious trim package features.

109.    Defendants have long been aware of the anti-theft benefits attendant to making immobilizers a standard feature on their vehicles based on the immobilizer mandates of other countries in which Kia and Hyundai sell their vehicles. In fact, Kia and Hyundai sell virtually identical vehicles as the Class Vehicles—***except equipped with immobilizers***—in other countries with immobilizer requirements. Nevertheless, Kia and Hyundai have failed to equip vehicles sold in the United States with the same immobilizer technology designed to prevent auto theft as a standard feature. Nor have Kia and Hyundai equipped the Class Vehicles with some alternative anti-theft feature or design element that would bring the Class Vehicles into compliance with FMVSS 114.

110.    Given the ease with which the Class Vehicles can be stolen, the United States has experienced a swell in reported car thefts of the Class Vehicles, both overall and as a percentage of total vehicle thefts.

111.    In recent years, this trend has been accelerated by viral TikTok videos and videos on other popular social media platforms revealing the lack of an immobilizer in the Class Vehicles and further showing how to steal a Class Vehicle by doing nothing more than bypassing the key slot and turning the ignition with a common USB cable (or any similarly shaped metal object) to start the engine.[4]

112.    For example, several major cities have reported a significant increase in car thefts of the Class Vehicles as follows:

a.    In St. Louis, while 3,784 vehicle thefts were reported in St. Louis for the entirety of 2021, 3,970 vehicle thefts were reported in 2022 through only

---

[4] Rob Stumpf, *How Thieves Are Stealing Hyundais and Kias with Just a USB Cable*, DRIVE (Aug. 2, 2022, 3:28 PM), https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable; *see also* Joe Barrett, *Police, Car Owners Wrestle with Growing Thefts of Kias, Hyundais*, WALL. ST. J. (Sept. 8, 2022, 8:00 AM ET), https://www.wsj.com/articles/police-car-owners-wrestle-with-growing-thefts-of-kias-hyundais-11662638401.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

August 29, 2022. Kia and Hyundai vehicles made up 48% of cars stolen in 2022, compared to only 7% of cars stolen in 2021.[5] Through the end of 2022, this projects to an increase to 2,600 stolen Kia and Hyundai vehicles from 2021 to 2022 in St. Louis alone.

> b.    In Chicago, only 58 Kia and Hyundai vehicles were stolen in August 2021, while 601 Kia and Hyundai vehicles were stolen in August 2022.[6]

> c.    In Milwaukee, as of September 2021, approximately 20 Kia and Hyundai vehicles were reported stolen to police *per day*.[7]

113.    While these examples illustrate how significantly the rate of theft of Kia and Hyundai vehicles increased after the public became aware of the defects in the Class Vehicles—defects known to Defendants for years—the problem is nationwide. Across the country, reported car thefts of the Class Vehicles have significantly increased over the past two years because they lack immobilizers or other anti-theft features or design elements sufficient to bring the Class Vehicles into compliance with FMVSS 114.

114.    The viral videos offering step-by-step instructions on how to steal Class Vehicles without a key further "dare" watchers to steal Class Vehicles as part of the "Kia Challenge." Videos created in response to the Kia Challenge show teens and young adults going for joy rides and, in some cases, abandoning or crashing the cars. The incidents have turned dangerous, with suspects and bystanders being seriously injured or killed following unsafe driving and crashes related to the thefts.

115.    The cost to repair stolen Class Vehicles can be substantial. The cost to repair a window and steering column on a Class Vehicle alone can exceed $3,000.[8]

---

[5] Barrett, *supra* note 4.
[6] *Id.*
[7] Chris Bruce, *Some Hyundai, Kia Models Can Be Stolen with a USB Cable*, Motor1.com (Aug. 3, 2022, 4:30 PM ET), https://www.motor1.com/news/602283/some-hyundai-kia-models-can-be-stolen-with-just-a-usb-cable/.
[8] James E. Causey, *Motor Vehicle Thefts in Milwaukee Are Up 152%. Auto Repair Businesses Say the Worst May Be Yet to Come*, Milwaukee J. Sentinel (Feb. 8, 2021, 3:53 PM CT),

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

Because cars taken on joy rides often experience further damage, the owner's total cost to repair her or his vehicle often exceeds $10,000.[9] Additionally, if a stolen Class Vehicle is not recovered, it becomes a total loss.

116.    Additionally, when the Class Vehicles are stolen due to the lack of any anti-theft features or design elements sufficient to comply with FMVSS 114, other property is often stolen and damaged in the process, such as any personal property that may have been within the vehicles at the time of the theft.

117.    In intentionally deciding, uniquely among manufacturers selling vehicles in the United States, to *not* equip the Class Vehicles with sufficient anti-theft features or design elements to prevent the theft of Class Vehicles without a key, the defendants have violated federal law. Notably, the Vehicles fail to comply with Federal Motor Vehicle Safety Standard ("**FMVSS**") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 571.114.

118.    The Class Vehicles do not comply with FMVSS 114 because the Vehicles can be started by simply defeating the key slot/starting system and using a common USB cable (or any other similarly shaped object) to activate the engine and achieve both forward self-mobility and steering. Upon information and belief, at this point, the USB cable can be removed without deactivating the engine.

119.    The Class Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114.

120.    If the Class Vehicles had been manufactured in compliance with FMVSS 114, as required under federal law, they would not have been stolen with

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

---

https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/.
[9] *Id.*

such frequency because, without a key, the engine would not start nor would forward self-mobility or steering be achieved.

121.    Recognizing the gravity of the problem, Defendants have announced that all new model vehicles will be equipped with an immobilizer. Defendants also have offered to provide three (3) steering wheel locks for their defective vehicles.

122.    Additionally, Hyundai announced that it will release a free anti-theft software update that "modifies certain vehicle control modules" on some Class Vehicles. "As a result, locking the doors with the key fob will set the factory alarm and activate an 'ignition kill' feature so the vehicles cannot be started when subjected to the popularized theft mode [sic]. Customers must use the key fob to unlock their vehicles to deactivate the 'ignition kill' feature."[10]

123.    The National Highway Traffic Safety Administration has announced that Kia will also offer a free anti-theft software upgrade to add anti-theft features to some Class Vehicles.[11] Upon information and belief, this software upgrade will operate similarly to Hyundai's software upgrade.

124.    Unfortunately, the horse is long out of the gate.  These changes offer little consolation to the thousands of consumers whose defective Class Vehicles have already been stolen, or to the insurers who have paid, and will continue to pay, claims, together with associated investigation and adjustment expenses related to thefts of Class Vehicles caused by the lack of any anti-theft feature or design element sufficient to bring the Class Vehicles into compliance with FMVSS 114.

125.    Defendants long have provided immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other

---

[10] Press Release, Hyundai Motor America, Hyundai Introduces Free Anti-Theft Software Upgrade, Beginning With More Than 1 Million Elantras, Sonatas and Venues (Feb. 14, 2023), https://www.hyundainews.com/en-us/releases/3768.

[11] Press Release, Nat'l Highway Traffic Safety Admin., Hyundai and Kia Launch Service Campaign to Prevent Theft of Millions of Vehicles Targeted by Social Media Challenge (Feb. 14, 2023), https://www.nhtsa.gov/press-releases/hyundai-kia-campaign-prevent-vehicle-theft.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

models. Meanwhile, the lower-end trim packages of those same models were manufactured and sold without an immobilizer.

126.    In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Class Vehicles were being sold without mandatory anti-theft protection required by the federal government to safeguard life and property, whether in the form of an immobilizer or otherwise.

127.    When Defendants did disclose the lack of an immobilizer in lower-end trim packages, the disclosure was often made in a detailed trim packages comparison chart that consumers generally do not receive, read and/or understand. Such disclosures merely listed "immobilizer" without explaining what it does, that it is an anti-theft device intended to satisfy federal safety regulations, or that the lack of an immobilizer greatly increased the risk of vehicle thefts.

128.    Defendants long have known the anti-theft and security benefits offered by immobilizers, as is evidenced by the fact that Defendants have incorporated immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other models. Defendants have simply refused to meet the standard of care established by their competitors, which installed immobilizers as standard technology on all their vehicles.

129.    Kia's knowledge of the efficacy of immobilizers in preventing vehicle theft is further evidenced by the fact that, as early as 2007, Kia sought to add an immobilizer to its Amanti model.[12] In petitioning the federal government for an exemption to certain parts-making requirements of the Theft Prevention Standard (49 C.F.R. part 51), Kia represented that immobilizers had reduced the rates of vehicle thefts on other vehicle models by between 58 and 80 percent.[13]

---

[12] See Petition for Exemption from the Vehicle Theft Prevention Standard; Hyundai-Kia America Technical Center, Inc., 75 Fed. Reg. 1447, 1448 (Jan. 11, 2010).
[13] Id.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

130.    Hyundai's knowledge of the efficacy of immobilizers in preventing vehicle theft is also evidenced by the fact that, as early as 2007, Hyundai sought to add an immobilizer to its Azera model.[14] In petitioning the federal government for an exemption to certain parts-making requirements of the Theft Prevention Standard (49 C.F.R. part 51), Hyundai represented that immobilizers had reduced the rates of vehicle thefts on other vehicle models by between 58 and 80 percent.[15]

131.    Upon information and belief, Defendants have also known of the unusually high rate of thefts experienced by Class Vehicles for many years, through scores of customer complaints relayed directly, through their dealers, and/or through relevant government agencies. Yet, Defendants continued to sell dangerous and defective Vehicles that lack an immobilizer or other anti-theft feature or design element sufficient to satisfy FMVSS 114. Defendants failed to warn consumers of the severe risk of theft that resulted from the lack of compliance with FMVSS 114.

132.    Only when the problem became too large to ignore did Defendants decide to introduce immobilizers as a standard feature in all new vehicles going forward and announced efforts toward a future software patch that supposedly may help reduce the rate of vehicle thefts in at least some Class Vehicles. But the Class members remain on the hook for all damages and expenses resulting from Defendants' wrongful actions.

## THE NAMED CLASS REPRESENTATIVES' CURRENT SUBROGATION CLAIMS

133.    Plaintiffs and the Class Members issue and underwrite policies of automobile and property insurance.

134.    The Class Vehicles' noncompliance with FMVSS 114 caused Plaintiffs' and Class Members' insureds to suffer property damage, including the loss of use

---

[14] *See* Petition for Exemption from the Vehicle Theft Prevention Standard; Hyundai-Kia America Technical Center, Inc., 72 Fed. Reg. 39661, 39661 (July 19, 2007).
[15] *Id.* at 39662.

thereof. As a result, Plaintiff's and Class Members' insureds made claims under the policies, which were paid by Plaintiffs and Class Members.

135.  As a result of the Class Vehicles' noncompliance with FMVSS 114, Plaintiffs and Class Members also incurred adjustment expenses.

136.  By virtue of their claim payments and adjustment expenses, for amounts in excess of $5,000,000, Plaintiffs and Class Members are now legally, equitably, and contractually subrogated to the rights, interests and claims of their insureds against all responsible third parties, including the Defendants herein, and have also incurred, and will continue to incur, damages in their own right.

## CLASS ACTION ALLEGATIONS

137.  Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) against Defendants.

138.  The Class consists of, during the fullest period allowed by law, all insurance companies that issued automobile and property insurance policies, whose insureds purchased or leased a Class Vehicle.

139.  The Class is limited to the time period beginning on the date established by the Court's determination of any applicable statute of limitation, after consideration of any tolling and accrual issues, and ending on the date of the entry of judgment.

140.  Excluded from the Class are (1) Defendants, their officers, directors, and employees, and (2) all automobile and property insurers which execute and timely file a request for exclusion from the class.

141.  **Numerosity**: While the exact number of members cannot be determined yet, the Class consists of a number of property and casualty insurers having insureds in the hundreds, if not thousands, who have suffered or will suffer property damage losses as a result of thefts of the Class Vehicles caused by the lack of anti-theft protection in compliance with FMVSS 114.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

29

142. The number of Class Members in the Class with insureds who have or will suffer such losses is so numerous that joinder of all members is impracticable.

143. **Commonality**: Common questions of law and fact exist as to all Class Members. Among the common questions of law and fact are:

    a. whether the vehicles were sold with a defect;

    b. whether the defect is a safety defect;

    c. whether the Defendants violated FMVSS 114 by manufacturing and selling Class Vehicles without sufficient anti-theft protection features or design elements;

    d. whether the Defendants intentionally placed the vehicles into the stream of commerce with actual knowledge that vehicles pose an unreasonable safety risk;

    e. whether a reasonable consumer would consider the defect or its consequences to be material;

    f. whether Defendants adequately disclosed the defect to consumers or whether Defendants' disclosures were insufficient and misleading;

    g. whether the design of the vehicles is defective and unreasonably dangerous;

    h. whether Defendants' conduct violated relevant federal and state statutes asserted herein.

144. **Typicality**: Plaintiffs have substantially the same interest in this matter as all other members of the Class and Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the class. Plaintiffs and all Class Members are insurance companies who issued automobile insurance policies to policyholders who owned or leased Class Vehicles manufactured and sold by Defendants. The insurance claims received and to be made under policies issued by members of the Class all satisfy the typicality requirement in that each of these claims will have had

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

an identical cause, namely, the loss due to a vehicle theft. Thus, the insurance claims of the named Class Members are typical of the claims covered and paid by all members of the class.

145. **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and have retained competent counsel. Counsel for Plaintiffs has the largest subrogation practice in the United States, having represented thousands of insurance companies in hundreds of thousands of subrogation cases since the founding of the firm in 1970. Counsel for Plaintiffs is also experienced in complex litigation, including MDL litigation and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Plaintiffs' claims are coincident with, and not antagonistic to, those of other Class Members they seek to represent. Plaintiffs have no disabling conflicts with members of the classes, and it will fairly and adequately represent the interests of the other Class Members.

146. **Superiority:** The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the class and a class action is the superior method for the fair and efficient adjudication of the controversy. The likelihood that all individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The cost to litigate separate and individual cases against the Defendants makes it cost prohibitive for most insurers to separately litigate their claims against Defendants. Serial adjudication in numerous venues is not efficient, timely or proper. Judicial resources throughout California and the United States will be unnecessarily depleted by litigation of individual claims. Joinder on an individual basis of hundreds of claims in hundreds, if not thousands of cases, would be impractical or impossible. Individualized rulings and judgments have and will result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in class action and product liability

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

litigation, foresees little difficulty in the management of this case as a class action. Indeed, the only way to ensure that the serious misconduct alleged herein are remedied is through a collective action on behalf of United States property insurers.

147.    Plaintiffs' claims are materially the same under the law of California as in all states in the United States. In the event that California law does not apply on a nationwide basis, Plaintiffs will seek to apply the laws of the various states and the District of Columbia as will be addressed in Plaintiffs' brief in support of class certification.

148.    The nature of notice to the proposed Class is as follows:

Notice to the proposed Class will be accomplished easily in that each member of both classes is a property and casualty insurance company, doing business within the United States, many of whom already are represented by Plaintiffs' counsel in other insurance litigation matters, and all of whom are readily able to be notified of all matters pertaining to the proposed class.

## COUNT I
## BREACH OF IMPLIED WARRANTY
## (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

149.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

150.    Defendants were at all relevant times the manufacturers, distributors, warrantors, and sellers of the Class Vehicles.

151.    In the alternative, if Defendants were not the sellers of the Class Vehicles to Plaintiffs' and the other Class Members' insureds, Plaintiffs' and the other Class Members' insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendants sold Class Vehicles to Kia and Hyundai dealers with the intent that they be resold to consumers, including Plaintiffs' and the other Class Members' insureds.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

152.   Defendants provided Plaintiffs' and the other Class Members' insureds with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia,* the defective Class Vehicles lacked any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

153.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

154.   Defendants' warranties were designed and intended for the benefit of the Plaintiffs' and Class Members' insureds as ultimate consumers of the Class Vehicles.

155.   Plaintiffs' and the other Class Members' insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Class Vehicles.

156.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs' and the other Class Members' insureds with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

157.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

158.   As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs, Class Members, and their insureds suffered property damage, including the loss of use thereof, causing them to sustain damages for which the Defendants and each of them are liable.

**COUNT II**
**BREACH OF IMPLIED WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT – 15 U.S.C. § 2301, ET SEQ.**
**(INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

159.   Plaintiffs and Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

160.   Plaintiffs and Class Members stand in the shoes of their insureds, who are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

161.   Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

162.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. §2301(1).

163.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and seller of the Class Vehicles.

164.   In the alternative, if Defendants were not the sellers of the Class Vehicles to Plaintiffs' and the other Class Members' insureds, Plaintiffs' and the other Class Members' insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendants sold Class Vehicles to Kia and Hyundai dealers with the intent that they be resold to consumers, including Plaintiffs' and the other Class Members' insureds.

165.   Defendants provided Plaintiffs' and the other Class Members' insureds with an implied warranty that the Class Vehicles and any parts thereof are

Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

LEGAL\61588560\6

merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia,* the defective Class Vehicles lacked any anti-theft features or design elements sufficient to satisfy FMVSS 114, or otherwise provide an adequate theft deterrent, resulting in a severe and highly dangerous risk of vehicle theft. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

166.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

167.    Defendants' warranties were designed and intended for the benefit of the Plaintiffs' and Class Members' insureds as ultimate consumers of the Class Vehicles.

168.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs' and the other Class Members' insured's with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

169.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

170.    Defendants' breach of the implied warranties has deprived Plaintiffs' and the other Class Members' insureds of the benefit of their bargain.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

171.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

172.   Plaintiffs, on behalf of themselves and the class, afforded the Defendants notice and a reasonable opportunity to cure their breach of the written warranties via a written letter, and Plaintiffs and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defect from the complaints and service requests it received from consumers, including through NHTSA, as well as from their own warranty claims, customer complaint data, and parts sales data. This is evidenced by Defendants' own statements acknowledging the issue.

173.   As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs, Class Members and their insureds suffered property damage, including the loss of use thereof, and sustained damages, including property damage, loss of use damage, consequential damages, diminution in value and costs, for which the Defendants, and each of them, are liable, together with statutory attorney's fees and such other relief which the Court deems to be just and appropriate.

**COUNT III**
**NEGLIGENCE**
**(INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

174.   Plaintiffs and Class Members incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

175.   Defendants manufactured, distributed and sold the Class Vehicles.

176.   Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Class Vehicles.

LEGAL\61588560\6

177.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114, as a result whereof Plaintiffs, Class Members and their insureds suffered property damage, including the loss of use thereof, together with other damages for which the Defendants are liable.

## COUNT IV
## UNJUST ENRICHMENT
### (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

178.   Plaintiffs and Class Members incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

179.   Plaintiffs' and Class Members' insureds conferred a monetary benefit on Defendants when they purchased or leased the Class Vehicles.

180.   Defendants had knowledge that this benefit was conferred upon them.

181.   Defendants charged and received from the Plaintiffs' and Class Members' insureds the benefit of a higher price for the Class Vehicles than the vehicles' value, in light of the noncompliance with FMVSS 114, the severe risk of vehicle theft, and Defendants' wrongful acts and omissions.

182.   Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

183.   Plaintiffs and the Class Members seek all available equitable relief, including but not limited to restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct.

## COUNT V

## NEGLIGENT FAILURE TO WARN
### (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

184.   Plaintiffs and Class Members incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

LEGAL\61588560\6

185.   Defendants manufactured, distributed, and sold the Class Vehicles.

186.   The Class Vehicles sold to Plaintiffs' and Class Members' insureds:

    A.    were not merchantable;

    B.    were not reasonably suited to the intended use for which they were sold; and

    C.    were in defective and unreasonably dangerous condition at the time of sale, by reason of the design of the Class Vehicles.

187.   Defendants owed the Plaintiffs' and Class Members' insureds a duty to warn with respect to dangers and risks associated with the ordinary and foreseeable use of the Class Vehicles, particularly when such risks arose from latent and hidden defects of design that could not be detected by the Plaintiffs' and Class Members' insureds in the exercise of any reasonable care.

188.   At all relevant times, including at the time of sale, Defendants knew that the Class Vehicles were defective because the lack of an immobilizer or other anti-theft features or design elements sufficient to comply with FMVSS 114 would create a dangerous risk of vehicle theft, a risk to the safety of consumers and the public, and a risk of property damage and loss.

189.   Defendants breached their duty owed to the Plaintiffs' and Class Members' insureds by completely failing to provide them with any warnings with respect to the dangers and risks of vehicle thefts and harm to consumers, the public, and property directly resulting from the design of the Class Vehicles, including the lack of anti-theft features and/or design elements that complied with FMVSS 114.

190.   The failure to warn Plaintiffs' and Class Members' insureds of the dangers and risks caused by noncompliance with FMVSS 114 was unreasonable, and Defendants' failure to warn was the result of a lack of due care and ordinary diligence.

191.   Defendants' failure to warn Plaintiffs' and Class Members' insureds regarding the defective and unreasonably dangerous condition of the Class Vehicles

COZEN O´ CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

proximately caused damage to the Plaintiffs' and Class Members' insureds resulting
from vehicle thefts.

192.    Defendants are liable for negligent failure to warn in tort for the
damages caused by the Class Vehicles.

193.    Defendants owe a duty to consumers not to sell dangerous products that
create severe risks of vehicle theft, property damage, and harm to the safety of
consumers and the public, and to warn consumers of such risks. This duty arises
under applicable law and is independent of any contractual obligation.

194.    As a direct and proximate result of Defendants' negligent failure to
warn Plaintiffs, Class Members and their insureds suffered property damage,
including the loss of use thereof, and other damages for which Defendants, and each
of them, are liable.

<u>**COUNT VI**</u>
**FRAUD**
**(INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

195.    Plaintiffs and Class Members incorporate by reference each preceding
and succeeding paragraph as though fully set forth at length herein.

196.    Defendants, by virtue of their deceptive trade practices and unlawful
behavior described herein, defrauded Plaintiffs' and Class Members' insureds. This
fraudulent course of conduct is ongoing and continues to this day.  Such acts of
fraud include unlawful behavior set forth in detail herein, including Defendants'
fraudulent concealment and material misrepresentations regarding the non-
compliant nature of their vehicles, which were made in violation of federal safety
and anti-theft requirements, and by the Defendants' conduct in refusing to provide
Plaintiffs' and Class Members' insureds with mandatory anti-theft protection unless
they agreed to spend substantial sums of money for the purpose of purchasing
expensive trim packages which they did not need, but which Defendants mandated
to be purchased for the class vehicles to be provided with anti-theft protection.

LEGAL\61588560\6

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

197.   Upon information and belief, Defendants knew that the Class Vehicles contained no anti-theft features or design elements that would prevent the Class Vehicles from achieving either forward self-mobility or steering without a key. Accordingly, Defendants were aware of the fact that the Class Vehicles suffer from defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

198.   Upon information and belief, Defendants have also known of the unusually high rate of thefts experienced by Class Vehicles for many years, through scores of customer complaints relayed directly, through their dealers, and through relevant governmental agencies. Yet, Defendants continued to sell dangerous and defective Vehicles that do not have adequate theft protection or comply with FMVSS 114 and failed to warn consumers of the consequent severe risk of theft.

199.   Defendants intentionally failed to disclose and actively concealed the fact that the Class Vehicles were defective and also did not comply with FMVSS 114.  In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Class Vehicles were being sold without adequate anti-theft protection to safeguard life and property, or that such protection was required by the federal government.  Defendants long have provided immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other models. Meanwhile, the lower-end trim packages of those same models were manufactured and sold without an immobilizer or any other anti-theft feature or design element that would prevent theft and satisfy FMVSS 114.

200.   Defendants intended to deceive consumers with their promotional materials, sales, and other conduct used to sell the class vehicles. This intent is clear based on, among other things, the fact that Defendants were well aware of the need

COZEN O´ CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

for anti-theft protection, and crafted promotional materials that failed to disclose this need, and requirement, while promoting expensive trim packages.

201.   Had the omitted information been disclosed, Plaintiffs, class members, and class members' insureds would have behaved differently by avoiding injury caused by the defective Class Vehicles.

202.   Thus, Kia and Hyundai have been defrauding their customers while simultaneously breaking federal law by continually selling certain cars with deceptive marketing materials and practices so that the consumers were not aware that the Class Vehicles were sold in violation of FMVSS 114 and without adequate anti-theft protection to protect life and property. In order for consumers to obtain these protections in certain Kia and Hyundai vehicles, Kia and Hyundai force the consumer to pay thousands of dollars extra for trim packages which include anti-theft protection, but which also include unnecessary features having nothing to do with anti-theft protection.

203.   As a direct and proximate result of Defendants' aforesaid fraud, Plaintiffs, Class Members and their insureds suffered property damage, including the loss of use thereof, and other damages for which the Defendants, and each of them, are liable.

### COUNT VII
### NEGLIGENT MISREPRESENTATION
### (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

204.   Plaintiffs and Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

205.   Defendants made representations to Plaintiffs' and Class Members' insureds concerning the safety and quality of the Class Vehicles that were not true, as more fully alleged in the preceding paragraphs, including (without limitation) ¶¶ 196–199.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

206.   Defendants had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiffs' and Class Members' insureds rely on the misrepresentations.

207.   Plaintiffs' and Class Members' insureds reasonably relied on Defendants' representations and, a direct and proximate result thereof, they suffered property damage, including the loss of use thereof, and other damages, for which the Defendants, and each of them, are liable.

<u>**COUNT VIII**</u>
**VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT**
**CAL. CIV. CODE § 1750, *ET SEQ.***
**(INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

208.   Plaintiffs and Class Members re-allege and incorporate each preceding and succeeding paragraph as if fully set forth at length herein.

209.   The California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq*. ("**CLRA**") prohibits "unfair or deceptive acts or practices."

210.   The CLRA applies to Defendants' actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

211.   At all relevant times, Plaintiffs' and the Class Members' insureds were "consumers" as defined in Civil Code § 1761(d). Plaintiffs and the Class Members, upon making payments to their insureds for property damage losses which they sustained, and which are covered under the insurance policies issued to them by the Plaintiffs and Class Members, acquire the rights of their insureds under policy provisions and by operation of law. Accordingly, Plaintiffs and the Class Members "stand in the shoes" of their insureds and are authorized to pursue all claims and causes of action belonging to their insureds against third parties such as the defendants herein who are legally liable for having caused the property damage losses paid by the Plaintiffs and Class Members. Thus, the consumer transactions

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

42

which were entered into by the insureds of the Plaintiffs and the Class Members

have created rights, claims and causes of action which are vested in the Plaintiffs

and Class Members who, under contractual and common law principals of

subrogation, may enforce these rights of action in the same way as their consumer

insureds.

212.    The transactions from which this action arise include transactions

involving the sale or lease of goods or services for personal, family or household

purposes within the meaning of Civil Code § 1761(d).

213.    Defendants developed, manufactured, marketed, and sold the Class

Vehicles containing the defects as alleged herein.

214.    Defendants developed, manufactured, marketed, and sold the Class

Vehicles despite knowledge of the defects and the serious safety risks created by the

defects, to the Plaintiffs' and Class Members' insureds.

215.    Defendants made misleading representations and omissions concerning

the benefits, performance, and safety of the Class Vehicles.

216.    Defendants marketed and sold the Class Vehicles as safe despite

knowledge that the defect posed serious safety risks to consumers, as well as the

general public; Defendants' failure to disclose the defects and safety risks known to

Defendants, but hidden from consumers; and Defendants' knowing concealment of

the unreasonable safety risks associated with the Class Vehicles, are

misrepresentations, omissions and concealments of material fact that constitute

unfair and deceptive practices in violation of the CLRA.

217.    Defendants violated the CLRA not only when they sold the Class

Vehicles and misrepresented the Class Vehicles to be safe for use, but also when

they failed to disclose to Plaintiffs, Class Members, and their insureds that the Class

Vehicles had known defects that posed a serious safety risk to consumers and the

public.

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

43

218. Defendants' deceptive trade practices were designed to induce Plaintiffs and the Class Members/insureds to purchase the Class Vehicles containing the defect and for Defendants to attempt to avoid the cost of replacing the defective vehicles already in use.

219. Defendants' violations of the CLRA were designed to conceal material facts about the defects and unreasonable safety risks in the Class Vehicles, in order both to induce Plaintiffs' and the Class Members' insureds to purchase the vehicles, and for the defendants to attempt to avoid the enormous business cost of repairing and replacing the vehicles.

220. By engaging in the unfair and deceptive conduct described herein and more fully above, Defendants actively concealed and failed to disclose material facts about their defective vehicles.

221. In purchasing or leasing the Class Vehicles, Plaintiffs' and Class Members' insureds were deceived by Defendants' failure to disclose their knowledge of the defects.

222. The omissions set forth above regarding the vehicles are material facts that a reasonable person would have considered important in deciding whether or not to purchase a vehicle made and sold by the Defendants. Indeed, no reasonable consumer would have purchased or leased a vehicle if they were informed of the defect. Had Defendants disclosed the true quality and nature of the Class Vehicles, Plaintiffs' and Class Members' insureds would not have purchased the Class Vehicles.

223. Defendants' acts were intended to be deceptive and fraudulent, namely, to market, distribute, and sell their defective vehicles.

224. Plaintiffs' and the Class Members' insureds suffered an injury in-fact as a direct result of Defendants' violations of the CLRA in that they purchased or leased defective vehicles.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

LEGAL\61588560\6

225.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

(i)   Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

(ii)   Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

(iii)   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

(iv)   Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

226.   Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and Class Members, as well as their insureds.

227.   In purchasing or leasing the Class Vehicles, Plaintiffs' and other Class Members' insureds were deceived by Defendants' failure to disclose their knowledge of the defective nature of the Class Vehicles.

228.   Plaintiffs, other Class Members, and their insureds had no way of knowing Defendants' representations were false, misleading, and incomplete or of knowing the true nature of the defective Class Vehicles.

229.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect. Plaintiffs, other Class Members, and their insureds did not, and could not, unravel Defendants' deceptive conduct on their own.

230.   Defendants knew or should have known their conduct violated the CLRA. Defendants owed consumers a duty to disclose the truth about the defective vehicles because the defective condition of the Class Vehicles created a safety

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

hazard while Defendants possessed exclusive knowledge of that defective condition, intentionally concealed that defective condition from consumers, and/or made incomplete representations in advertisements and on their websites, failing to warn consumers of the defect. Defendants also knew that the Class Vehicles were materially compromised by the defects alleged herein.

231. Defendants had a duty to disclose that the Class Vehicles were fundamentally flawed because the defective vehicles created a safety hazard, and consumers, including the Plaintiffs' insureds, relied on Defendants' material misrepresentations and omissions regarding the features of the Class Vehicles.

232. Defendants' violations cause and have caused continuing damages to Plaintiffs, other Class Members, and their insureds while adversely affecting the public interest.

233. Pursuant to California Civil Code section 1780(a), Plaintiffs seek an order enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including further concealment of the Defect.

234. Pursuant to California Civil Code section 1782, Plaintiffs have notified Defendants in writing both by certified mail and by overnight delivery, of the particular violations of section 1770 of the CLRA relating to the vehicles and demanded that defendants rectify their conduct and take remedial action.

235. Defendants' wrongful business practices constituted and constitute a continuing course of conduct in violation of the CLRA. Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims for:

(i)    Actual damages;

(ii)   Disgorgement and restitution to Plaintiffs, the Class, and general public;

(iii)  Punitive damages;

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

(iv)   Attorneys' fees and costs; and

(v)   Other relief that this Court deems proper.

## COUNT VIII
### VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE § 17200, ET SEQ.
### (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

236.   Plaintiffs and Class Members re-allege and incorporate each preceding and succeeding paragraph as if fully set forth at length herein.

237.   Defendants have engaged in unfair competition within the meaning of the California Business & Professional Code § 17200, et seq. ("**the California UCL**") because Defendants' conduct was unlawful, misleading and unfair, as herein alleged.

238.   The California Unfair Competition Law ("**UCL**") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

239.   Defendants' business practices are unlawful because they violate the California Civ. Code, including at least §§ 1668, 1709, 1710, and 1750 *et seq.,* and California Commercial Code § 2313. Defendants' practices, moreover, are unlawful because they violate Federal Motor Vehicle Safety Standard 114, which states: "The purpose of this standard is to decrease the likelihood that a vehicle is stolen … This standard applies to passenger cars …" The standard provides that without a key, the vehicle must prevent "normal activation of the vehicle's engine or motor" and either "steering, or forward self-mobility." In other words, a key is required in order to start the engine and drive the vehicle. In the U.S., and indeed, worldwide, electronic transmitters and receivers called "immobilizers" are utilized to comply with the United States' regulatory requirements to prevent the theft of vehicles.

240.   In intentionally deciding, uniquely among manufacturers selling vehicles in the United States, to ***not*** equip the Class Vehicles with sufficient anti-

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

47

theft features or design elements to prevent the theft of Class Vehicles without a key, the defendants violated federal law. Specifically, Kia and Hyundai have been breaking federal law by continually selling certain of their cars that do not comply with FMVSS 114, which the government requires to protect life and property.

241.   In order for consumers to obtain these protections in certain Kia and Hyundai vehicles, Kia and Hyundai force the consumer to pay thousands of dollars extra for trim packages which include anti-theft protection, but which also include unnecessary features having nothing to do with anti-theft protection.

242.   The Class Vehicles do not comply with FMVSS 114 because the Vehicles can be started by simply defeating the key slot/starting system and using a common USB cable (or any other similarly shaped object) to activate the engine and achieve both forward self-mobility and steering. Upon information and belief, at this point, the USB cable can be removed without deactivating the engine.

243.   The Class Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114.

244.   If the Class Vehicles had been manufactured in compliance with FMVSS 114, as required under federal law, they would not have been stolen because, without a key, the perpetrator would have been unable to start the engine and achieve forward self-mobility and steering.

245.   Immobilizers have been proven to deter auto theft indeed a 2016 study reflects use of immobilizers lowering the rate of car thefts by 40% over a ten-year period.  Selling calls without immobilizers or any other anti-theft feature or design element sufficient to comply with FMVSS 114 is not only illegal, but unfair to consumers because they expose consumers to elevated risks of theft without fair warning or justification. Selling cars without anti-theft features or design elements sufficient to comply with FMVSS 114 is not only illegal, but unfair to consumers because it exposes consumers to elevated risks of theft without fair warning or

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

justification.  Defendants failed to provide notice that the Class Vehicles lacked any anti-theft feature or design element sufficient to provide an adequate theft deterrent, or otherwise comply with FMVSS 114 and failed to give any notice as to the risks associated with operating or even owning a vehicle that does not comply with FMVSS 114.

246.   Defendants violated the California UCL when they concealed and failed to disclose the serious safety risks to consumers that their vehicles created, concealed and failed to disclose that their vehicles were defective when they had a duty to disclose these safety risks, and sold the vehicles as if they were fit for ordinary purposes and did not present unreasonable safety risks.

247.   Defendants violated the California UCL when they failed to disclose that their vehicles created serious safety risks and were defective as described herein when they had a duty to disclose the safety risks to consumers and instead falsely misrepresented that their vehicles were safe for consumer use.

248.   Kia and Hyundai did not include features or design elements on the vehicles at issue in this action that would bring those vehicles into compliance with the letter or intent of FMVSS 114.  Thus, defendants developed, manufactured, marketed and sold their vehicles in a dangerous and defective condition.  This too was unfair to consumers, and therefore violated the UCL.

249.   As is more fully set forth above, Defendants had knowledge of the serious safety risks presented by their vehicles and had knowledge of their defects prior to their sale to Plaintiffs' and Class Members' insureds.  Indeed, as described above, Defendants have long had notice of the existence, and reasons for the federal regulations requiring anti-theft features or design elements that prevent either forward self-mobility or steering without a key.

250.   The absence of anti-theft protection constitutes a safety issue that triggered Defendants' duty to disclose this safety issue to consumers.

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

251.    Defendants failed to disclose to Plaintiffs' and Class Members' insureds the material fact that their vehicles posed serious safety risks upon sale and were defective in lacking mandatory anti-theft protection.  Defendants were in exclusive possession of this knowledge.

252.    Plaintiffs' and the Class Members' insureds did not and could not have had knowledge of the safety risks created by the vehicles at the time that they purchased their vehicles. Plaintiffs have standing to represent the Class Members in this action.

253.    Despite their knowledge of the serious safety risks that the vehicles presented to consumers and the public, defendants failed to issue an appropriate warning, recall, or a campaign to replace the vehicles for years, concealing their knowledge both of the defects and the safety issues presented by the vehicles.

254.    Defendants' business acts are unfair, unlawful and fraudulent within the meaning of the California UCL.

255.    As entities with exclusive knowledge regarding the safety risk and defect in the vehicles, Defendants had a duty to disclose these defects, particularly in light of the fact that the vehicles posed serious safety risks to Plaintiff's and the Class Members' insureds.

256.    Plaintiffs and the Class Members insuring property and automobiles reasonably expected that Defendants would have disclosed the existence of both the defects and the serious safety risks that the vehicles presented to consumers and the public, and reasonably expected that defendants would not sell a vehicle that was unsafe or sell a vehicle that contained defects in violation of federal regulations. This information is and was material to Plaintiffs, Class Members, and their insureds.

257.    Defendants, at all times relevant, knew or should have known that Plaintiffs and the Class Members did not know of, or could not have reasonably discovered, the safety risks or the defects in the Defendants' vehicles.

LEGAL\61588560\6

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

258.   By concealing the serious safety risks created by their vehicles and the existence of these defects, Defendants engaged in actionable, unfair, and fraudulent conduct within the meaning of the California UCL.

259.   Had Plaintiffs' and Class Members' insureds known of the serious safety risks and the defects in the vehicles, they would not have purchased the vehicles.

260.   These acts and practices have deceived Plaintiffs, Class Members and their insureds, and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiffs and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

261.   Defendants' business acts and practices alleged herein are unfair within the meaning of the California UCL. Specifically, by failing to disclose and concealing the existence of a defect in the vehicles, Defendants engaged in unfair conduct within the meaning of the California UCL.

262.   Defendants' misconduct is unfair within the meaning of the California UCL as it offends established policy and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

263.   Plaintiffs and Class Members insuring property and automobiles have suffered damages as a result of defendants' misconduct.

264.   Defendants' unlawful, unfair and fraudulent business acts and practices continue through the date of the filing of this Complaint.

265.   Under the California UCL, Plaintiffs and Class Members request that this Court enjoin defendants from engaging in business practices that constitute a violation of the California UCL. Plaintiffs and the class further request that this Court enter such orders or judgments as may be necessary to restore by restitution to

1    any person in interest any value which may have been lost, or incurred by means of

2    such unfair practices, as provided for in Bus. & Prof. Code § 17203 and for such

3    other relief as set forth herein.

4
## COUNT IX
## VIOLATIONS OF THE CALIFORNIA SONG-BEVERLY ACT
## CAL. CIV. CODE §§ 1791 *ET SEQ.*
## (INDIVIDUALLY AND ON BEHALF OF THE CLASS)

7    266.    Plaintiffs and Class Members incorporate by reference each preceding

8    and succeeding paragraph as though fully set forth at length herein.

9    267.    For the purposes of this Count (Count IX) only, the definition of "Class

10    Vehicles" is restricted to those Class Vehicles that were sold at retail in the State of

11    California. The definition of "Class Vehicles" is otherwise as previously averred.

12    268.    At all relevant times hereto, Defendants were the manufacturer,

13    distributor, warrantor, and seller of the Class Vehicles. Defendants knew or should

14    have known of the specific use for which the Class Vehicles were purchased.

15    269.    Defendants provided Plaintiffs' and the Class Members' insureds with

16    an implied warranty that the Class Vehicles, and any parts thereof, are merchantable

17    and fit for the ordinary purposes for which they were sold. The Class Vehicles,

18    however, are not fit for their ordinary purpose because the Class Vehicles suffered

19    an inherent defect at the time of sale in that they were not equipped with sufficient

20    or adequate anti-theft protection.

21    270.    Defendants' actions, as complained of herein, breached the implied

22    warranty that the Class Vehicles were of merchantable quality and fit for such use in

23    violation of California Civil Code §§ 1792 and 1791.1.

24    271.    As a direct and proximate result of Defendants' breach of their implied

25    warranties, Plaintiffs, Class Members, and their insureds suffered property damage,

26    including the loss of use thereof, causing them to sustain damages for which the

27    Defendants and each of them are liable.

28

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

52

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for the following judgment:

a.    An Order certifying this action as a class action;

b.    An Order appointing Plaintiffs as class representatives and appointing undersigned counsel to represent the Class Members;

c.    A Declaration that the vehicles are defective and do not comply with FMVSS 114;

d.    A Declaration that the defects in the Defendants' vehicles create serious safety risks to consumers and to the broader public;

e.    Payment to the Class of reimbursement for all damages resulting from the replacement or repair of the defective products, in an amount to be proven at trial;

f.    Payment to the Class of all damages resulting from property damage caused by the Defendants' defective products, in an amount to be proven at trial;

g.    Restitution as authorized by law;

h.    An award of attorneys' fees and costs, as provided by law and as would be reasonable from any recovery of damages recovered for or benefits bestowed on the class;

i.    Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

j.    Such other and further relief as this Court may deem just, equitable, or proper.

LEGAL\61588560\6

Dated:  March 10, 2023

**COZEN O'CONNOR**

By:/s/ Nathan Dooley
Nathan Dooley
CA Bar No. (SBN 224331)
NDooley@cozen.com
601 S. Figueroa Street
Suite 3700
Los Angeles, CA 90017
Tel.: 213.892.7933; Fax: 213.892.7999

Elliott R. Feldman (*pro hac vice to be filed*)
Efeldman@cozen.com
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071; Fax: 215.701.2282

*Attorneys for Plaintiffs*

LEGAL\61588560\6

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims for which a jury trial is authorized.

COZEN O'CONNOR


By: /s/ Nathan Dooley

Nathan Dooley
*Attorneys for Plaintiffs*

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017